In re David S. KORNGUTH, Debtor.

Stephanie D. SOROKA, Plaintiff,

v.

David S. KORNGUTH, Defendant.

Bankruptcy No. 89–1731.
Adv. No. 89–0329.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 20, 1990.

Robert H. Slone, Mahady & Mahady, Greensburg, Pa., for debtor/defendant.

Christine A. Gale, Baskin, Flaherty, Elliott & Mannino, P.C., Pittsburgh, Pa., for plaintiff.

K. Lawrence Kemp, Kemp & Kemp, New Kensington, Pa., Chapter 7 Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Plaintiff's *Complaint Objecting To Discharge of Debts.* Specifically, Plaintiff Stephanie D. Soroka, former wife of Defendant David S. Kornguth ("Debtor"), seeks to have certain debts assumed by Debtor under a separation agreement declared nondischargeable.

Plaintiff maintains that Debtor's obligation to pay a second mortgage on their former marital residence and to pay $500.00 in counsel fees incurred by Plaintiff during their divorce proceedings are in the nature of support and maintenance and, consequently, are nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

Debtor denies that these obligations are in the nature of support and maintenance. He claims that they are in the nature of a property settlement and thus are dischargeable.

The Court finds, for reasons set forth below, that both of these obligations are in the nature of support and maintenance and, accordingly, are nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

## FACTS

Plaintiff and Debtor were legally married on January 22, 1982. Four (4) children were born of the marriage, all of whom presently are in the care of Plaintiff.

Plaintiff has not been employed since 1983 and had no outside source of income in 1989. Debtor was employed by the Pennsylvania State Police and had a net income of approximately $1,400.00 per month in 1989.

On February 28, 1989, Plaintiff and Debtor executed a separation agreement ("agreement") which contained provisions pertaining to spousal support and alimony, child support, equitable distribution of property, and counsel fees.

Debtor agreed to pay Plaintiff $250.00 per month between March 1, 1989 and June 30, 1992 in satisfaction of Plaintiff's claims for spousal support, alimony *pendente lite* and alimony.

Debtor also agreed to pay a total of $800.00 per month in child support for the parties' four (4) minor children.

The parties had purchased a marital residence located at 3000 Crabhollow Road, Penn Hills, Pennsylvania, in July of 1983 for $35,000.00. They took out a first mortgage of $28,000.00 at that time. Payments on the first mortgage amount to $414.00 per month. On April 13, 1988, Debtor conveyed his right, title, and interest in the marital residence to Plaintiff and her mother, Pelagia Soroka. In consideration thereof, Plaintiff agreed to assume and be solely liable for all further liability for payment of the first mortgage, and agreed to hold Debtor harmless from any liability.

The marital residence also was subject to a second mortgage, which was the result of a $16,000.00 bill consolidation loan. Debtor agreed to assume and be solely liable for repayment of the second mortgage and to hold Plaintiff harmless from any liability.

Finally, Debtor agreed to pay Plaintiff $500.00 in satisfaction of Plaintiff's claim for counsel fees incurred in connection with their divorce proceedings.

Plaintiff and Debtor were divorced on March 7, 1989. The terms of the separation agreement were incorporated in the divorce decree.

Plaintiff and the parties' minor children continued to reside in the former residence for a period after the divorce decree was issued.

On June 28, 1989, Debtor filed a voluntary Chapter 7 petition in this Court. Debtor listed the second mortgage on the marital residence on Schedule A–2, and listed Plaintiff as a creditor on Schedule A–3 of his bankruptcy petition. Debtor seeks to have both of these debts discharged in bankruptcy.

## ANALYSIS

Section 523 of the Bankruptcy Code provides that a discharge granted under 11 U.S.C. § 727 does not apply to certain types of debt. For instance, 11 U.S.C. § 523(a)(5) provides in relevant part that:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.　　.　　.　　.　　.

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record ...

■ Whether a debt qualifies as alimony, maintenance, or support is a question of federal, not state, law. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess., 364 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6320; *also* S.Rep. No. 989, 95th Cong., 2d Sess., 79 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865. A state tribunal's definitions of alimony, maintenance, or support do not preclude a different federal interpretation for purposes of dischargeability. *See In re Thomas*, 21 B.R. 571, 573 (Bankr.E.D.Pa.1982).

■ The dischargeability of a given debt depends on the substance, not the form, of the liability. *In re Spong*, 661 F.2d 6, 9 (2nd Cir.1981). The label attached to a debt does not control its categorization. A court must go beyond the mere language of an agreement, to the substance of the obligation. *See Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984).

Extrinsic evidence may be considered in determining the nature of the obligation and, hence, its dischargeability. *See Matter of Benich*, 811 F.2d 943, 945 (5th Cir. 1987). Consequently, the fact that Debtor's obligation to pay the second mortgage on the marital residence arose under a section of the separation agreement entitled "Equitable Property Distribution" while his obligations to pay spousal and child support arose under sections entitled "Spousal Support, Alimony Pendente Lite And Alimony" and "Child Support", respectively, is not dispositive.

There is no uniform set of factors which apply in every case for determining whether a given debt is in the nature of support and maintenance. Which factors are relevant depends on the specifics of a case. Three (3) factors, however, may be of particular importance, to-wit:

(1) the intention of the parties when the obligation was created;

(2) the financial circumstances and needs of the parties, especially of the party opposing dischargeability, at the time the obligation was incurred; and

(3) the function that the obligation serves.

*See In re Miller*, 34 B.R. 289, 292 (Bankr. E.D.Pa.1983). None of these factors is dispositive. All of them should be considered together. *Id.* Also, other factors, such as the length of the marriage and the presence of minor children, may be relevant. *Id.*

■ If payment of a debt is necessary for reasonable support and maintenance of a debtor's former spouse and/or minor children at the time debtor assumed responsibility for the debt, and the former spouse was unable at that time to pay the debt, it usually is nondischargeable. *In re Miller*, 34 B.R. at 293. Also, the third factor (listed above) is to be accorded substantial weight when the debt in question, including a second mortgage, pertains to the former marital residence which is to be used by the former spouse and minor children as their residence after the divorce. *Id.*

■ When all of the relevant factors are taken into consideration, the most reasonable conclusion is that Debtor's assumption of the second mortgage on the marital residence was in the nature of support and maintenance of Plaintiff and their minor children.

The language of the agreement, when considered in isolation, might be taken as indicating that Plaintiff and Debtor did *not* intend for Debtor's assumption of the second mortgage to provide support and maintenance for Plaintiff and the parties' minor children. Assumption of the second mortgage was provided for in the section of the agreement entitled "Equitable Property Distribution". The obligations to provide spousal and child support were provided for in sections entitled "Spousal Support, Alimony Pendente Lite And Alimony" and "Child Support", respectively. Arguably, its inclusion in the section pertaining to equitable property distribution, and not in those sections pertaining to spousal and child support, suggests that Debtors' agreement to pay the second mortgage was *not* intended to provide support and maintenance.

It has been pointed out, however, that one must, when determining whether a debt is dischargeable, look beyond the language of an agreement to the substance of the obligation. *Shaver, supra* at 1316. The indication arising from the language of the agreement that the debt in question was not intended to provide support and maintenance is outweighed by other more compelling considerations which strongly indicate that it was so intended.

For instance, the relative financial circumstances and needs of the parties at the time the obligation was incurred strongly indicate that the debt in question is in the nature of support and maintenance. Plaintiff and the parties' minor children could not have continued to live in the former marital residence had Debtor not assumed the obligation to pay the second mortgage. Plaintiff had not been employed since 1983 and had no outside income. She had remained at home in order to raise their children. Debtor, on the other hand, was employed at the time by the Pennsylvania State Police and had a net income of $1,400.00 per month. Although payment of spousal and child support and of the second mortgage unquestionably severely strained Debtor's finances, his income in theory was such that he was capable of doing what Plaintiff obviously could not accomplish on her own.

The purpose of Debtor's assumption of the second mortgage was to keep a roof over Plaintiff and the parties' minor children. Had Debtor not assumed the obligation, Plaintiff and the parties' minor children would not have been able to remain in the former marital residence. It is virtually inconceivable that Plaintiff could have provided for herself and the children *and* made monthly payments on the second mortgage without this alimony, maintenance and/or support payment.

■ Application of the above factors also leads to the conclusion that Debtor's agreement to pay $500.00 for counsel fees incurred by Plaintiff in their divorce proceedings was in the nature of support and maintenance. Particularly compelling in this regard is the disparity in the parties' financial situations. It is improbable that Plaintiff would have paid her own counsel fees, in addition to meeting all other expenses, without Debtor's support. *Williams v. Williams*, 703 F.2d 1055, 1057 (8th Cir.1983).

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 20th day of March, 1990, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the debts arising out of Defendant David S. Kornguth's agreement to pay the second mortgage on 3000 Crabhollow Road, Penn Hills, Pennsylvania, and to pay Plaintiff Stephanie D. Soroka the sum of $500.00 in satisfaction of Plaintiff's claim for counsel fees are nondischargeable pursuant to 11 U.S.C. § 523(a)(5).